UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE ANNUITY, WELFARE AND APPRENTICESHIP
SKILL IMPROVEMENT & SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 15, 15A, 15C & 15D, AFL-CIO,
      *by their Trustees James T. Callahan, Thomas A.*
      *Callahan, Michael Salgo and William Tyson,*
CENTRAL PENSION FUND OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS,
      *by its Chief Executive Officer Michael A. Crabtree,*
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 15, 15A, 15C & 15D, AFL-CIO,
      *by its President & Business Manager Thomas A.*
      *Callahan,*

|  |  |
|---|---|
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| -against- | 22-CV-01957-KAM-SJB |

GENRUS CORP.,
      *doing business as Genrus Corporation, Genrus*
      *Corp. Inc. and Genrus Corpation, Inc.,*

                    Defendant.
----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of

the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO

("Local 15 Trust Funds"), Central Pension Fund of the International Union of Operating

Engineers ("CPF" or "Central Pension Fund"), and International Union of Operating

Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15 Union") (collectively,

"Plaintiffs") commenced this action on April 6, 2022 against Genrus Corp. ("Genrus")

for violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001–1461, and Section 301 of the Labor Management Relations Act of 1947

(the "LMRA"), as amended, 29 U.S.C. § 185, seeking to compel an audit and to recover

payments and contributions owed, in addition to attorney's fees and costs.  (Compl. dated Apr. 6, 2022 ("Compl."), Dkt. No. 1).  Genrus failed to answer or otherwise respond to the Complaint.

On June 6, 2022, the Clerk of Court entered a default against Genrus, (Clerk's Entry of Default dated June 6, 2022, Dkt. No. 7), and Plaintiffs filed a motion for default judgment two days later.  (Mot. for Default J. dated June 8, 2022, Dkt. No. 8).  The Honorable Kiyo Matsumoto referred the motion to the undersigned for a report and recommendation on September 30, 2022.  (Order Referring Mot. dated Sept. 30, 2022). For the reasons stated below, it is respectfully recommended that a default judgment be entered against Genrus, and attorney's fees and costs be awarded as detailed herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Local 15 Union is a labor organization under the LMRA, 29 U.S.C. § 152, with its principal place of business at 44-40 11th Street, Long Island City, New York.  (Compl. ¶¶ 3, 13).  Thomas A. Callahan is its President and Business Manager.  (*Id.* ¶ 14).  The Local 15 Trust Funds are joint trustee funds under Section 302 of the LMRA, 29 U.S.C. § 186, and multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).  (*Id.* ¶¶ 4, 8).  They include the Local 15 Annuity Fund, an employee pension benefit plan that provides retirement income to plan participants, and the Local 15 Welfare and Apprenticeship Skill Improvement & Safety Funds, which are welfare benefit plans that provide participants medical, vacation, and other benefits.  (*Id.* ¶¶ 6–7).  James T. Callahan, Thomas A. Callahan, Michael Salgo, and William Tyson, the trustees and fiduciaries of the Local 15 Trust Funds, have brought this suit on their behalf.  (*Id.* ¶ 5).

CPF, an employee benefit plan that provides participants retirement income, is also a joint trustee fund under the LMRA and a multi-employer/employee benefit plan under ERISA. (*Id.* ¶¶ 9, 11–12). CPF maintains its principal place of business in Washington, D.C. at 4115 Chesapeake Street, N.W. (Compl. ¶ 9). Michael A. Crabtree, the Chief Executive Officer of CPF and a fiduciary of the plan, brought this suit on behalf of the plan. (*Id.* ¶ 10).

Genrus is a New York corporation with a principal place of business at 200-31 Linden Boulevard, St. Albans, New York, (*id.* ¶ 15),[1] and is an employer under ERISA, 29 U.S.C. § 1002(5), and the LMRA, 29 U.S.C. § 185. (*Id.* ¶ 18). Genrus entered into a collective bargaining agreement with Local 15 Union on April 30, 2010. (Collective Bargaining Agreement ("Genrus CBA") dated Apr. 30, 2010, attached as Ex. B to Aff. of James M. Steinberg ("Steinberg Aff."), Dkt. No. 10). The Genrus CBA incorporates and binds the parties to the "Association Collective Bargaining Agreements" ("ACBA"). (Genrus CBA ¶ 4 ("The parties . . . agree to be bound to all the agreements and declarations of trusts, amendments and regulations . . . referenced in the applicable Association Collective Bargaining Agreements[.]")). The ACBA, in turn, binds Genrus to trust agreements (the "Trust Agreements") which establish the Local 15 Trust Funds and

---

[1] The Complaint also states that Genrus is a foreign corporation authorized to do business in New York. (Compl. ¶¶ 16–17). However, the New York Secretary of State's website, of which the Court takes judicial notice, lists Genrus Corp. as a domestic business corporation with a service of process address at 107-50 Guy Brewer Boulevard, Jamaica, New York. *See J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website." (citing *Tate v. YRC Worldwide, Inc.*, No. 08-CV-7, 2008 WL 11318316, at *2 (E.D.N.Y. Sept. 23, 2008))); N.Y. Dep't of State, Div. of Corps., *Corporation & Business Entity Database Search*, https://apps.dos.ny.gov/publicInquiry (last visited Jan. 23, 2023).

CPF.  (*See id.* ¶ 4; *see also* Agreement - GCA & Operating Engineers Locals 14-14B & 15-15A dated July 1, 2018 – June 30, 2022 ("GCA – Heavy Construction Agreement"), attached as Ex. C to Steinberg Aff., art XI.B, § 11 (incorporating Trust Agreements)).[2]

Under the Trust Agreements, Genrus has certain payment and record keeping obligations.  For example, Genrus is obligated to make benefit contributions based on the number of hours worked by employees.  (*See, e.g.*, Agreement and Decl. of Trust of Welfare Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, A.F.L.-C.I.O. as amended on Mar. 13, 2014 ("Welfare Fund"), attached as Ex. E to Steinberg Aff., at 2).  The Trust Agreements also provide a right to examine the books and records of Genrus: "The Trustees, or their authorized representatives, may examine the pertinent books and records of each Employer whenever such examination may be deemed necessary or advisable by the Trustees in connection with the proper administration of the Funds."  (Compl. ¶ 28; *see also* Welfare Fund art. VII, § 7; Local 15, 15A, 15D Operating Engineers Apprenticeship, Skill Improvement and Safety Fund Agreement and Decl. of Trust as amended on Mar. 13, 2014 ("Apprenticeship Fund"), attached as Ex. D to Steinberg Aff., art. V, § 5; Agreement and Decl. of Trust of the Annuity Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, AFL-CIO as amended on Mar. 13, 2014 ("Annuity Fund"), attached as Ex. F to Steinberg Aff., art. V, § 5).  The CPF Trust Agreement has a nearly identical provision. (Restated Agreement and Decl. of Trust of the CPF dated Jan. 16, 2004 ("Pension

---

[2] Genrus is a construction company and the applicable ACBA is the collective bargaining agreement between the Local 15 Union and the General Contractors Association of New York, Inc. ("GCA")—the "GCA – Heavy Construction Agreement." (Aff. of Catherine Chase, Funds Administrator for Local 15 Trust Funds, dated June 3, 2022 ("Chase Aff."), Dkt. No. 9 ¶ 3; GCA – Heavy Construction Agreement art. II).

Fund"), attached as Ex. G to Steinberg Aff., § 4.4 ("The Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund.")).

Plaintiffs allege that Genrus may have underreported the number of employees, employee hours, and wages paid, and therefore underreported contributions due to the Local 15 Trust Funds and CPF. (Compl. ¶ 30). Plaintiffs requested Genrus's books and records to determine if the contributions were properly paid. (*Id.* ¶ 31). As of the date of the Complaint, Genrus failed to schedule an audit. (*Id.*).

The Complaint contains three causes of action: for (1) an audit pursuant to Section 209(a)(1) of ERISA, 19 U.S.C. § 1059(a)(1), the Trust Agreements, and the Genrus CBA, (Compl. ¶¶ 24–31); (2) breach of the Genrus CBA for failure to make required contributions, (*id.* ¶¶ 32–36); (3) breach of ERISA Section 515, 29 U.S.C. § 1145, for failure to make required contributions. (Compl. ¶¶ 37–41).

As a remedy, the Complaint seeks an order requiring Genrus to produce its books and records for an audit of the period July 1, 2019 through June 30, 2021. (*Id.* at 9–10). Plaintiffs also seek payment of outstanding contributions, plus interest following the completion of the audit. (*Id.* at 10). Finally, Plaintiffs seek the unpaid contributions along with prejudgment interest, liquidated damages pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), and attorney's fees, auditor's fees, and costs. (Compl. at 10–11).

Genrus was served with a summons and the Complaint on May 9, 2022 via the Office of the Secretary of State of New York. (Aff. of Service dated May 10, 2022, Dkt. No. 5). Despite this service, Genrus failed to appear, answer, or otherwise respond to

the Complaint. Plaintiffs sought a certificate of default against Genrus on June 1, 2022, (Req. for Certificate of Default dated June 1, 2022, Dkt. No. 6), which was granted by the Clerk of Court on June 6, 2022. (Clerk's Entry of Default dated June 6, 2022, Dkt. No. 7).

On June 8, 2022, Plaintiffs moved for default judgment. (Mot. for Default J. dated June 8, 2022, Dkt. No. 8). Genrus was served with a copy of the motion and accompanying papers at its principal place of business address, in compliance with Local Civil Rule 55.2(c). (Aff. of Service dated June 8, 2022, Dkt. No. 12 (declaring that documents were mailed on June 7, 2022 to Genrus's address at 200-31 Linden Boulevard, St. Albans, New York 11412)). Genrus failed to respond to the motion for default judgment. Judge Matsumoto referred the motion to the undersigned for report and recommendation. (Order Referring Mot. dated Sept. 30, 2022).

DISCUSSION

I.    Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a default against Genrus on June 6, 2022. (Clerk's Entry of Default, Dkt. No. 7).

The next question, before reaching liability or damages, is whether Genrus's conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Genrus's failure to respond to the Complaint demonstrates its default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them).  A copy of the summons and Complaint were served via the Office of the Secretary of State of New York on May 9, 2022.  (Aff. of Service dated May 10, 2022, Dkt. No. 5).  The motion for default judgment and supporting papers were also served via mail to Genrus's last known business address.  (Aff. of Service dated June 8, 2022, Dkt. No. 12).  Notwithstanding this notice and service Genrus did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because Genrus did not appear and no defense has been presented to the Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL

1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1. Third, Plaintiffs would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

## II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017).

A. <u>Audit Claim</u>

Plaintiffs seek an order requiring Genrus to submit to an audit for the period of July 1, 2019 through June 30, 2021, (Compl. at 9–10), based on the Genrus CBA and the ACBA (and the Trust Agreements incorporated therein).  A suit alleging a breach of a CBA is properly understood as one brought pursuant to the LMRA.  Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"The Supreme Court has interpreted section 301 [of the LMRA] as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quotations omitted).  Breaches of the CBA and ACBA, and the underlying Trust Agreements, based on a failure to comply with an audit request, are actionable under Section 301.  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Eng'rs, Local 14-14B v. Midwest REM Enters., Inc.*, No. 20-CV-5893, 2021 WL 4341416, at *5 (E.D.N.Y. Sept. 1, 2021), *report and recommendation adopted*, 2021 WL 4340965, at *1 (Sept. 23, 2021); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) ("Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement.") (collecting cases), *report and recommendation adopted*, 2011 WL 5402898, at *1 (Nov. 4, 2011).

ERISA requires Genrus to maintain records sufficient for an employee to determine the benefits he or she is due. *See* 29 U.S.C. § 1059(a)(1) (Section 209 of ERISA ("[E]very employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.")); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347–48 (E.D.N.Y. 2009). The Trust Agreements, in turn, entitle Plaintiffs to review those records and seek an audit. They have the right to "examine the pertinent books and records of [Genrus] whenever such examination may be deemed necessary." (Apprenticeship Fund art. V, § 5; Annuity Fund art. V, § 5; Welfare Fund art. VII, § 7; *see also* Pension Fund § 4.4). As noted earlier, these Trust Agreements are incorporated via reference into the ACBA. (*See supra* at 3).

Plaintiffs requested Genrus's books and records to determine if contributions had been properly paid. (Compl. ¶ 31).[3] They allege that Genrus disregarded this audit demand and the additional demand articulated in this Complaint. (*Id.*; Chase Aff. ¶ 5).

Plaintiffs have thus alleged that under ERISA Genrus was required to maintain books and records related to fund contributions, and under the Trust Agreements, Genrus CBA, and ACBA, submit to an audit, but failed to do so. By virtue of Genrus's default, these allegations are accepted as true. This is sufficient to state a claim under Section 301. *Midwest REM Enters., Inc.*, 2021 WL 4341416, at *5. And Genrus is therefore liable for failing to provide the requested audit. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating*

---

[3] Neither the Complaint nor the materials provided in support of the default judgment motion indicate when, or in what form, the audit demand was initially made on Genrus. Nonetheless, the failure to respond to the Complaint entitles an inference that an audit demand was ignored and a breach occurred.

*Eng'rs, Local 15, 15A, 15C & 15D v. Trac Constr. Grp., Inc.*, No. 22-CV-1935, 2022 WL 7810540, at \*3 (E.D.N.Y. Oct. 4, 2022), *report and recommendation adopted*, Order (Dec. 21, 2022).

  B. <u>Breach of Genrus CBA (Unpaid Contributions)</u>

  Plaintiffs separately allege that Genrus breached the CBA and other agreements by failing to make required contributions for its employees.  As noted above, a breach of a CBA is a claim under Section 301 of the LMRA.  And as such, a breach of the CBA based on a failure to make employee benefit contributions is actionable under Section 301.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980, 2021 WL 4755704, at \*2 (E.D.N.Y. Aug. 16, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3928952, at \*2 (Sept. 2, 2021); *Gesualdi v. D & E Top Soil & Trucking, Inc.*, No. 11-CV-5938, 2013 WL 1729269, at \*3 (E.D.N.Y. Mar. 26, 2013) (finding, on a motion for default judgment, that defendant's "failure to pay contributions when they were due in breach of the CBA . . . violates section 301(a) of the LMRA.").

  The Genrus CBA obligates Genrus to "remit all contributions as set forth under the applicable Association Collective Bargaining Agreements."  (Genrus CBA ¶ 4).  The ACBA binds Genrus to the Trust Agreements and sets the schedule under which payments are to be made to the funds covered by the Trust Agreements.  (*See, e.g.*, GCA – Heavy Construction Agreement art. XI.B, §§ 1–3 (setting forth payment obligations for the Welfare and Pension Funds for the period July 1, 2018 through June 30, 2022)).  Plaintiffs allege that Genrus failed to make contributions for the period of July 1, 2019

through June 30, 2021.[4]  (Compl. ¶¶ 33, 38).  This is sufficient to state a claim under Section 301.  *Trac Constr. Grp., Inc.*, 2022 WL 7810540, at *3 ("[A]llegations that an employer failed to remit contributions according to the terms of an applicable collective bargaining agreement are sufficient to establish liability for breach of that agreement under the LMRA."); *Trs. of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.*, No. 05-CV-1665, 2007 WL 3124612, at *4 (E.D.N.Y. Oct. 23, 2007) ("[T]he pleading asserts that defendants were obligated, under the CBA, to remit dues checkoffs and other contributions . . . and that defendants violated that agreement by failing to pay required contributions.  Thus, plaintiffs have sufficiently pled their claim . . . under the LMRA." (citations and quotations omitted)).  And even though Plaintiffs have not articulated the exact amounts that are unpaid, Genrus's default is a concession of the facts alleged, and it is still appropriate to enter a default judgment on this LMRA claim for failure to make contributions.  *See, e.g.*, *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259–60 (E.D.N.Y. 2007).

   C.  Violation of ERISA

   Based on the same failure to make the required contributions, Plaintiffs also allege a violation of Section 515 of ERISA, 29 U.S.C. § 1145.  (Compl. ¶¶ 37–41).  Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to

---

[4] A number of the allegations in the Complaint are pleaded on information and belief.  (*E.g.*, Compl. ¶¶ 33–35, 38–39).  Allegations made on information and belief are sufficient to hold a defendant liable where such allegations state facts primarily within the defendant's knowledge.  *See, e.g.*, *Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *7–*8 (E.D.N.Y. March 9, 2015) (collecting cases) (entering default judgment where failure to remit contributions was pleaded on information and belief) (adopting report and recommendation).

a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions."  29 U.S.C. § 1145; *see also Flanagan*, 2015 WL 1042279, at *8 (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement").  The Trustees of a plan may, pursuant to Section 502, bring an action to enforce this requirement.  *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990).

To establish a violation of Section 515, the Trustees must show that Genrus (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions.  *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Local 2013 v. Precision Abstract, LLC*, No. 16-CV-4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017), *report and recommendation adopted*, 2017 WL 4296740, at *1 (Sept. 26, 2017).  Genrus is alleged to be an employer within the meaning of ERISA, (Compl. ¶ 18), and the Trust Funds are employee benefit plans as defined by ERISA.  (*Id.* ¶¶ 8, 11).

Plaintiffs, as they do for the LMRA claim, allege that the CBA obligated Genrus to make benefit contributions, which it failed to do, over the same period from July 1, 2019 through June 30, 2021.  (*Id.* ¶ 38).  This is sufficient to state a claim under Section 515.  *See, e.g.*, *Trs. of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–*4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038, at *1 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"), *report and*

*recommendation adopted*, 2011 WL 5402898, at *1 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA . . . .  Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").  Again, even though the amount of unpaid contributions is to be determined, a default judgment for ERISA liability may still be entered.  *See, e.g.*, *Lanzafame*, 545 F. Supp. 2d at 259–60; *Trs. of Metal Polishers Local 8A-28A Funds v. Superiro Scaffolding Servs. Inc.*, No. 12-CV-4251, 2013 WL 4095495, at *2 (E.D.N.Y. Aug. 9, 2013).

## III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."  *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty."  *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though

liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Plaintiffs request: (1) an order requiring Genrus to provide its books and records for an audit for the period of July 1, 2019 through June 30, 2021; (2) payment by Genrus, in an amount to be determined later, of unpaid contributions, interest, liquidated damages, attorney's fees, audit costs, and costs; and (3) attorney's fees and costs incurred to date. (Mem. of Law in Supp. of Mot. for Default J. dated June 8, 2022 ("Mem. of Law"), Dkt. No. 11 at 6–7).

A. <u>Audit Claim</u>

Plaintiffs seek an order compelling Genrus to submit to an audit of its books and records to ascertain the amount, if any, of unpaid contributions that are due. (*Id.* at 6; Steinberg Aff. ¶ 8).

ERISA empowers a court to award "such other legal or equitable relief as the court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), in connection with a suit to redress an ERISA violation. *See id.*; 29 U.S.C. § 1132(a)(3) (permitting fiduciary to bring civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan"). Genrus is liable for unpaid contributions under Section 515 of ERISA; that is the subject of Count III of the Complaint. And this Court may enter an order requiring Genrus to comply with an audit so the amount of those contributions may be determined. *See Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940, 2015 WL 1443038, at *9 (E.D.N.Y. Mar.

27, 2015) (relief that may be ordered under § 1132(g)(2)(E) includes directing defendant to comply with and cooperate in audit); *Midwest REM Enters., Inc.*, 2021 WL 4341416, at *5 ("[R]elief may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit[.]" (quotations omitted)) (collecting cases).

"Likewise, pursuant to the LMRA, courts may enforce a union's contractual right to audit an employer's books and records." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Getty Contracting, LLC*, No. 18-CV-1450, 2018 WL 7076168, at *4 (E.D.N.Y. Oct. 5, 2018), *report and recommendation adopted*, 2018 WL 7076162, at *1 (Dec. 12, 2018). "It is well established that, if the terms of a CBA or Trust agreement give Trustees the power to perform an audit and to get access to documents necessary to perform the audit, courts will enforce that contractual obligation against an employer who refuses to comply." *Int'l Union of Operating Eng'rs Local 98 Health & Welfare Fund v. S & R Corp.*, 95 F. Supp. 3d 1, 6 (D. Mass. 2015) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.*, 472 U.S. 559, 581 (1985)).

The Court respectfully recommends that an order compelling Genrus to submit to an audit be issued, with the scope of the inquiry limited to the period July 1, 2019 to June 30, 2021.

B. Unpaid Contributions and Other Relief

Plaintiffs seek the opportunity to return to court to seek a judgment in the amount of unpaid contributions that are owed plus interest, liquidated damages, future attorney's fees, audit costs, and litigation costs. (Mem. of Law at 6–8.) A plaintiff who has established liability under Section 515 is entitled to an award of: "(1) the amount of

16

unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame*, 545 F. Supp. 2d at 259 (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505–08 (2d Cir. 1995).[5]

An audit of Genrus's books and records has not yet been conducted.  (Compl. ¶ 31; Chase Aff. ¶ 5).  As such, "there is no basis [at this time] for awarding these damages." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Local 14-14B v. Marbro Realty Co. Inc*., No. 11-CV-5722, 2012 WL 3536499, at *6 (E.D.N.Y. July 16, 2012) (quoting *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Local 14-14B v. A.J.S. Trucking & Excavating Corp.*, No. 06-CV-0701, 2007 WL 539152, at *4 (E.D.N.Y. Feb. 16, 2007)), *report and recommendation adopted*, 2012 WL 3542317, at *1 (Aug. 14, 2012).  Following completion of an audit, Plaintiffs may petition the Court, with proper evidentiary support, to amend the judgment to include this recovery.  *See, e.g.*, *id.*; *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Rizzo Env't Servs. Corp.*, No. 22-CV-556, 2022 WL 1460585, at *5 (E.D.N.Y. May 9, 2022) (adopting report and

---

[5] Plaintiffs would be entitled pursuant to Section 301 of the LMRA, to the unpaid contributions not covered by ERISA but unpaid or paid late in violation of the CBA or other agreements.  *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C, 15D v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *3 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation) (collecting cases).  Any amounts due under the CBA but not covered by ERISA may also be awarded following the audit.

recommendation); *Midwest REM Enters., Inc.*, 2021 WL 4341416, at *6 (collecting cases).

    C. <u>Attorney's Fees and Costs</u>

Plaintiffs seek an award of attorney's fees and costs incurred to date. (Mem. of Law at 7–11). Counsel seeks $2,152.50 in attorney's fees for 5.25 hours of work performed at an hourly rate of $410. (Steinberg Aff. ¶ 13; Att'y Invoice, attached as Ex. I to Steinberg Aff.).

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce Section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The Trust Agreements also provide for attorney's fees if the Funds must litigate to enforce payment obligations. (*See* Apprenticeship Fund art. V, § 6; Welfare Fund art. VII, § 8; Annuity Fund art. V, § 6; Pension Fund § 4.5(e)). Plaintiffs brought this lawsuit to enforce payment obligations under both ERISA and the Trust Agreements, and although the amount of unpaid contributions is to be determined, Plaintiffs are entitled to attorney's fees and costs incurred to date.

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–*5 (E.D.N.Y. Feb. 26, 2007),

*report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award. In his affidavit, Plaintiffs' counsel James Steinberg states that he has practiced in this area of law since 1995 and is a partner at Brady McGuire & Steinberg, P.C. (Steinberg Aff. ¶¶ 1, 13). He attaches documentation summarizing the work performed and time spent on this matter. (*See* Att'y Invoice). His regular hourly billing rate is $410. (Steinberg Aff. ¶ 13).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour. *E.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018). As such, the Court finds that the rate of $410 an hour requested by Steinberg is reasonable.

Turning next to the reasonableness of the time expended, according to the billing records submitted, counsel spent 5.25 hours drafting and filing the complaint and motion for default judgment. Contemporaneous billing records are required for a court to award attorney's fees. *See Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729, 2009 WL 2160536, at *6 (E.D.N.Y. July 17, 2009) ("This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work."). Steinberg's hours were documented using a

"reconstructed record of original time entries made contemporaneously with the services performed." (Mem. of Law at 8; *see* Att'y Invoice). "Courts have accepted such documentation as sufficient evidence for an award of attorney's fees." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D v. Midwest REM Enters., Inc.*, No. 20-CV-5896, 2021 WL 2809794, at *7 (E.D.N.Y. July 6, 2021). Steinberg's hours are within the range of hours expended in similar default judgment cases. *See, e.g.*, *id.* (approving 7.25 hours of work performed by Steinberg, which involved preparation of the complaint and the motion for default judgment)*; Trac Constr. Grp., Inc.*, 2022 WL 7810540, at *6 (collecting cases); *Rizzo Env't Servs. Corp.*, 2022 WL 1460585, at *7. As such, the Court finds the hours expended to be reasonable.

The Court thus respectfully recommends the award of $2,152.50 in attorney's fees (5.25 hours at a rate of $410 per hour).

In addition, Plaintiffs seek reimbursement for costs and expenses incurred, including $402 in court filing fees and $210 in service of process fees. (Mem. of Law at 11; Steinberg Aff. ¶ 10). ERISA provides that "[a]n award of reasonable costs is mandatory in a successful action to recover delinquent contributions." *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1078470, at *1 (Mar. 30, 2012); *see also* 29 U.S.C. § 1132(g)(2)(D). Recoverable costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 (alteration in original) (quoting *Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (adopting report and recommendation)). Plaintiffs may recover "[c]osts

relating to filing fees, process servers, postage, and photocopying." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).

Filing fees are recoverable without supporting documentation if verified by the docket. *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902, at *2 (May 9, 2017). Since the docket indicates that the $402 filing fee was paid, (*see* Dkt. No. 1), the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by documentation. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714, at *1 (Oct. 18, 2017); *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058, at *1 (Sept. 19, 2016). Plaintiffs provided a process server invoice indicating the cost of service of the summons and Complaint was $210. (*See* Invoice for Professional Services, attached as Ex. H to Steinberg Aff.). The Court finds it appropriate to award this cost.

Therefore, the Court respectfully recommends an award of $612 in costs.

CONCLUSION

For the reasons stated, it is respectfully recommended that a default judgment be entered against Genrus, and Genrus be ordered to:

1.  submit to an audit of relevant records related to contributions owed to the Local 15 Trust Funds and the Central Pension Fund for the time period of July 1, 2019 through June 30, 2021;

2.  pay Plaintiffs $2,152.50 in attorney's fees; and

3.  pay Plaintiffs $612 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Genrus and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara*  February 1, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York